## WALLACE v. HOPKINS.

### No. 11,226; June 13, 1888.

18 Pac. 673.

Brokers—Sale of Mining Stock—Commissions.—The plaintiff and defendant entered into a written agreement that if plaintiff should succeed in selling certain mining stock in defendant's possession, that plaintiff should receive all defendant's stock at twenty cents per share, and the shares held for third persons at fifty cents per share. Plaintiff then went to T., one of the stockholders, and by inducing him to believe that all the stockholders had agreed to take twenty cents per share for their stock, procured an order on defendant authorizing him to sell all T.'s stock at twenty cents per share, and deposited the said order with defendant. The next day T. revoked the order, but plaintiff received no notice thereof, and sold the mine at the price agreed on between himself and defendant. Defendant received all the money paid by the persons to whom plaintiff sold, and paid T. fifty cents per share for his stock. Plaintiff sued defendant for the difference between the price of the stock at twenty cents and fifty cents per share. Held, that defendant was not liable, not having received any money from the sale of the stock for the use of plaintiff.

APPEAL from Superior Court, City and County of San Francisco.

The plaintiff, Thomas Wallace, alleges that on or about the eighth day of March, 1879, at San Francisco, the defendant, William S. Hopkins, received fourteen hundred and fifty dollars from the sale of stock in the "Niagara G. & S. Mg. Co.," to be paid to and for the use of the plaintiff; that the defendant, although often requested, has not paid any part thereof to the plaintiff; and judgment is asked for that sum, with interest from that day. The answer denies these statements. The evidence establishes, without any conflict, that on the twenty-eighth day of February, 1879, the defendant had in his possession fifty-seven thousand five hundred and ninety-five shares of the stock of said company, of which four thousand nine hundred shares belonged to William R. Townsend. A portion belonged to the defendant, and the remainder was owned by other persons. On that day Townsend gave the plaintiff an order, directed to the defendant, read-

ing as follows: "You are hereby authorized to sell the 5,000 shares Niagara stock, more or less, in your hands, belonging to me, for the sum of one thousand dollars, gold coin. This to hold good for fifteen days from date"—which writing the plaintiff on that day delivered to the defendant, who wrote at the bottom of it the following, in red ink: "[Four thousand nine hundred shares belonging to W. R. Townsend, 225 shares having been delivered to his client. 2–28–79. Wm. S. Hopkins.]" On the same day the defendant delivered all the shares of stock, in an envelope, to the cashier of Donohoe, Kelly & Co.'s Bank, at San Francisco, and instructed the cashier to deliver the package containing the stock to the plaintiff, or his order, in New York, upon payment of $15,446. The stock was accordingly forwarded to Eugene Kelly & Co., New York city. The plaintiff started for New York March 1, 1879, arrived there the 8th of that month, and on the 10th of that month the plaintiff effected a sale of all of the stock, Israel S. Blumenburg paying Eugene Kelly & Co. on that day the said fifteen thousand four hundred and forty-six dollars; and the money was telegraphed out to San Francisco the same day. In that sale the four thousand nine hundred shares brought two thousand four hundred and fifty dollars, being part of the fifteen thousand four hundred and forty-six dollars, all of which money was received by the defendant on that day; and it is the difference between that two thousand four hundred and fifty dollars and one thousand dollars, which the plaintiff claims Townsend was to have for the four thousand nine hundred shares of stock, that the plaintiff seeks to recover in this action. The plaintiff testified that he agreed with Townsend to pay him one thousand dollars on or before the fifteenth day of March, 1879, for the four thousand nine hundred shares of stock; that Townsend agreed to the sale, and gave to the plaintiff that order upon the defendant to deliver the stock to the plaintiff upon the payment of one thousand dollars; that the plaintiff received this order on the twenty-eighth day of February, 1879; that he took the order to the defendant on the same day; and then stated to him that he had purchased this stock from Townsend; that the understanding between the plaintiff and defendant then was that the plaintiff should pay the defendant, on account of Townsend, one thousand dollars for that

stock, and that the defendant should hold the balance the
stock might bring to plaintiff's credit, provided the plaintiff
made the payment on or before March 15, 1879, according to
the order; that the defendant said he was very glad that the
plaintiff had made that purchase; that he would feel more
interest in making sale of the whole parcel of stock; that the
defendant then agreed, if the plaintiff went east, to sell the
whole stock, and succeeded in so doing, the whole money
should be sent to the defendant, and that the money received
for the four thousand nine hundred shares should be dis-
posed of by the defendant by paying Townsend the one thou-
sand dollars, and retaining the balance for the plaintiff; that
the plaintiff agreed with Townsend to pay him the one thou-
sand dollars out of the proceeds of the sale of the stock; that
the plaintiff left New York on the next day, March 1, 1879, to
effect a sale of the whole stock; that the plaintiff demanded
the fourteen hundred and fifty dollars of the defendant sev-
eral times before bringing this suit, and after the defendant
had admitted to the plaintiff the receipt of the money; that
the reason the fourteen hundred and fifty dollars was not de-
ducted out in New York was because the defendant held the
whole stock in trust for the parties interested in the pool, and
the collection was made as an entirety; that the plaintiff's
object in going east was to insure the sale of the stock, be-
cause he had an interest of fourteen hundred and fifty dollars
in the success of the sale; that Townsend and the defendant
understood that the plaintiff was going to New York to effect
the sale; that the only interest the plaintiff had in the whole
stock, or making the sale, was the four thousand nine hundred
shares, which he thus purchased. The defendant testified
that it is likely he wrote the red-ink portion on the order, in
presence of the plaintiff, to show him just how many shares
Townsend had in his possession; that when the plaintiff deliv-
ered this written order to him, the plaintiff expressed a desire
that when the money was paid over, the defendant should
retain the difference between the one thousand dollars and the
two thousand four hundred and fifty dollars, and wished the
defendant to place the difference to the plaintiff's credit, and
pay it over to him; that it was a question in his mind, and so
he stated to him, if it was the right or proper thing for him to
do; that he had no understanding or agreement with the

plaintiff with reference to the Townsend stock and money other than that whoever the money belonged to he was willing to pay it to; but that he did not recognize Mr. Townsend's order on him to accept the one thousand dollars. W. R. Townsend testified that the substance of the conversation between the plaintiff and himself, at the time he signed the writing above mentioned, was that the plaintiff stated he was going east to effect a sale of the Niagara stock which the defendant held in the pool for the different stockholders. That his understanding from the plaintiff was that the other stockholders would accept twenty cents a share. That plaintiff wanted to know whether he would go in with the rest. That he told him he would do whatever the rest did. He would not swear that the plaintiff told him that the other parties had authorized Hopkins to sell the stock for twenty cents a share. That was his understanding. For that reason he gave him the writing. That the next day he saw one of the stockholders, who told him he had not agreed to sell at that price. That he revoked the letter to Hopkins as soon as he could find him. That the plaintiff told him he was going east to sell the stock, and he wanted him to allow his stock to be sold for one thousand dollars. That he understood the plaintiff to have the option on all the stock at rate of twenty cents a share. And he says: "I wrote that note to Hopkins, authorizing him to accept one thousand dollars, which would be twenty cents a share on my stock." That he did not notify the plaintiff that he had revoked the authority which he had given the defendant to sell.

The court found the following facts: "(1) That on the twenty-eighth day of February, 1879, the defendant had in his possession upward of fifty thousand shares of the capital stock of a corporation called the 'Niagara Gold & Silver Mining Company.' A portion of said stock was owned by said defendant, and a portion thereof was owned by other persons. Defendant had authority from the owners of said stock to sell the same at fifty cents per share. Among the stock so held by him were four thousand nine hundred shares belonging to and the property of one Wm. R. Townsend. Said Townsend had previously authorized said defendant to sell said stock for fifty cents a share. On said twenty-eighth day of February, 1879, said plaintiff and said defendant made

an agreement by which the said defendant gave the plaintiff the privilege to purchase all said stock held by said defendant on or before the fifteenth day of March, 1879, at the following rates, to wit: Twenty cents a share for the stock owned by defendant, and fifty cents a share for the stock held by defendant, but owned by other parties. This agreement included the four thousand nine hundred shares of stock owned by said Townsend. After the agreement was made, and on said twenty-eighth day of February, 1879, the said plaintiff had an interview with said Townsend, in which the said Townsend understood that all the stockholders owning said stock held by said defendant, as aforesaid, had authorized the sale of the same at twenty cents a share. Thereupon, and with that understanding, Townsend wrote a note to said defendant authorizing him to sell his [Townsend's] stock at one thousand dollars, which note was delivered to said Wallace by Townsend, and by Wallace delivered to defendant. Afterward, and on the same day, Townsend called on defendant, and from him learned that the other stockholders having stock in defendant's hands had not authorized the sale of their stock at twenty cents a share, or at any price less than fifty cents per share. Thereupon Townsend revoked and countermanded his said authority to defendant to sell said stock at twenty cents a share, but left defendant with authority to sell it at fifty cents a share. Plaintiff was not advised of this action on Townsend's part, but went immediately to New York and effected a sale of all said stock at the prices before mentioned, to wit, twenty cents a share for defendant's stock, and fifty cents a share for all the other stock held by defendant, including Townsend's said stock. And the said purchase price was paid over to said defendant within said fifteen days after said twenty-eighth day of February, 1879. On receipt of the money, defendant paid Townsend fifty cents a share for his stock. The money claimed by plaintiff is the difference between one thousand dollars and the fifty cents a share of this four thousand nine hundred shares of Townsend's stock. (2) The defendant did not receive the sum of fourteen hundred and fifty dollars from the sale of the capital stock of the Niagara Gold & Silver Mining Company on the eighth day of March, 1879, to be paid to or for the use of the plaintiff, nor did defendant receive any money from the sale

of said stock for the use of the plaintiff, and the allegation of the complaint in that behalf is not true. (3) The defendant has not paid the sum of fourteen hundred and fifty dollars to plaintiff, or any part of it." The court gave judgment for the defendant for costs. The plaintiff appeals from the judgment and the order denying his motion for a new trial.

William H. Hart for appellant; Daniel Titus for respondent.

FOOTE, C.—This action was brought to recover a sum of money alleged to be due the plaintiff from the defendant. The court below gave judgment in favor of the defendant. and from that and an order denying a new trial the plaintiff has appealed. In his statement, on motion for a new trial, he specifies particulars in which the evidence is alleged to be insufficient to support findings 1 and 2 of the decision; and his main contention here seems to be that the trial court made those findings against the evidence given on the trial. We have carefully examined all the evidence in the record, and are of the opinion that the court below was fully justified in finding as it did, and, no prejudicial error appearing, we advise that the judgment and order be affirmed.

We concur: Belcher, C. C.; Hayne, C.

Per CURIAM.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.